IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| IN THE MATTER OF: | ) | |
| | ) | |
| ARTHUR HENRY HYSELL, | ) | |
| | ) | CASE NO. BK09-41505-TJM |
| Debtor(s). | ) | A09-4055-TJM |
| J.E. MEURET GRAIN CO., INC., | ) | |
| a Nebraska corporation, | ) | |
| | ) | |
| Plaintiff, | ) | CHAPTER 7 |
| | ) | |
| vs. | ) | |
| | ) | |
| ARTHUR HENRY HYSELL, | ) | |
| | ) | |
| Defendant. | ) | |

ORDER

This matter is before the court on the debtor defendant's motion for summary judgment (Fil. No. 53) and resistance by the plaintiff (Fil. No. 55). David Grant Hicks represents the debtor, and James P. Meuret represents the plaintiff. Evidence and briefs were filed and, pursuant to the court's authority under Nebraska Rule of Bankruptcy Procedure 7056-1, the motion was taken under advisement without oral arguments.

The motion is granted. The defendant breached the contract with plaintiff, but did not defraud plaintiff.

The debtor defendant, who at all relevant times was not a farmer and did not own or raise any corn, contacted J.E. Meuret Grain Co., Inc. ("Meuret Grain"), on two occasions in November 2006 and March 2007 about selling corn. Each time, he agreed to sell 75,000 bushels to "Nedak Grain % J.E. Meuret Grain Co., Inc.," and signed written contracts to that effect. The debtor signed the first contract on December 1, 2006, agreeing to deliver 75,000 bushels of corn in March 2008 for a price of $3.50 per bushel. The debtor signed the second contract on March 29, 2007, agreeing to deliver another 75,000 bushels of corn in January 2008 for a price of $3.81 per bushel. He subsequently rolled that contract to June delivery. Both contracts called for delivery to "Nedak," which was a local ethanol plant under construction in the fall of 2006. The debtor was an investor in Nedak. Nedak contracted with Meuret Grain to procure corn for the ethanol plant. The plant was not in a position to take delivery of corn during the months Mr. Hysell's contracts called for such delivery, but Meuret Grain was nevertheless contractually obligated to provide corn, for which it was paid by Nedak.

In February 2008, Meuret Grain became aware that the debtor was not a farmer, did not own 150,000 bushels of corn, and did not have the resources to purchase the amount of corn necessary

to fulfill the contracts. After Meuret Grain's attempts to have the debtor assure performance of the contracts failed, Meuret Grain cancelled the contracts and filed a lawsuit in the District Court of Antelope County, Nebraska, alleging breach of contract, fraud, deceit, and false representation. The lawsuit was stayed by the debtor's Chapter 7 filing on May 29, 2009. Thereafter, Meuret Grain filed this adversary proceeding to liquidate the amount owed and enter judgment for the plaintiff in the amount of $247,500.00 and to except that debt from discharge pursuant to 11 U.S.C. § 523(a)(2) for fraud, false representations, and false pretenses. The debtor has now moved for summary judgment, asserting that the debt is dischargeable because he did not engage in fraud, make false representations, or act with false pretenses, nor did he intend to deceive the plaintiff, and even if false representations were made, the plaintiff did not justifiably rely on them.

Summary judgment is appropriate only if the record, when viewed in the light most favorable to the non-moving party, shows there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c) (made applicable to adversary proceedings in bankruptcy by Fed. R. Bankr. P. 7056); see, e.g., Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986). The court must examine the record to ascertain whether the movant, through depositions, answers to interrogatories, admissions, affidavits, and other evidence, has demonstrated the absence of a genuine issue of material fact. Beard v. Banks, 548 U.S. 521, 529 (2006). If the movant has done so, then the non-moving party, bearing the burden of persuasion, must by affidavit or otherwise set forth specific facts showing that there is a genuine issue for trial. Id. The court does not weigh the evidence, make credibility determinations, or attempt to discern the truth of any factual issue. Great Plains Real Estate Dev., L.L.C. v. Union Cent. Life Ins. Co., 536 F.3d 939, 943-44 (8th Cir. 2008). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Blocker v. Patch (In re Patch), 526 F.3d 1176, 1180 (8th Cir. 2008) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)).

The following facts are uncontroverted:

1. Meuret Grain is a Nebraska corporation regularly engaged in the business of purchasing and selling grain, as well as various other agricultural enterprises.

2. Meuret Grain is a licensed and bonded warehouse and grain dealer in the State of Nebraska.

3. Arthur Hysell is an individual residing in Atkinson, Nebraska, who is a self-employed truck driver.

4. Prior to Mr. Hysell's bankruptcy filing, Meuret Grain sued Mr. Hysell in the District Court of Antelope County, Nebraska, at Case Number CI-08-24. That litigation had not yet gone to trial when Mr. Hysell filed his bankruptcy case, thereby staying the state court proceedings.

5. On or about February 25th, 2008, Mr. Hysell's son notified Meuret Grain that Mr. Hysell was not going to be able to perform under the contract.

6. Thereafter, Meuret Grain contacted Mr. Hysell to verify the son's communication and Mr. Hysell confirmed that he would not be able to perform under the contract.

7. Meuret Grain subsequently sent Mr. Hysell written demand for adequate assurances of due performance.

8. Mr. Hysell was not able or willing to provide adequate assurances.

9. Thereafter, Meuret Grain cancelled the contracts.

10. Mr. Hysell is not licensed as a grain dealer by the Nebraska Public Service Commission.

11. In Mr. Hysell's deposition in the state court litigation, Mr. Hysell gave the following testimony:

> Q: You claim through our discovery that you were not speculating on the direction of the market; is that correct?
> A: Well, I guess you call it speculation the way it ended up being.

Deposition of Arthur Hysell, 18:15-19.

> Q: […] I mean isn't it clear that you were speculating on the market?
> A: Yes.

Deposition of Arthur Hysell, 19:9-12.

> …
> Q: And do you remember telling Patrick Meuret that you were speculating on the direction of the market on March 3rd, 2008?
> A: Yes.

Deposition of Arthur Hysell, 19:23-20:1.

> …
> Q: Okay, you were purely speculating on the direction of the market?
> A: Yes.

Deposition of Arthur Hysell, 122:21-23.

The Bankruptcy Code prohibits the discharge of a debt "for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's . . . financial condition[.]" 11 U.S.C. § 523(a)(2)(A). To establish fraud within the context of § 523(a)(2)(A), the creditor must show, by a preponderance of the evidence, that: (1) the debtor made a representation; (2) the representation was made at a time when the debtor knew the representation was false; (3) the debtor made the representation deliberately and intentionally with the intention and purpose of deceiving the creditor; (4) the creditor justifiably relied on such representation; and (5) the creditor sustained a loss as the proximate result of the representation having been made. R & R Ready Mix v. Freier (In re Freier), 604 F.3d 583, 587 (8th Cir. 2010).

"Actual fraud, by definition, consists of any deceit, artifice, trick or design involving direct and active operation of the mind, used to circumvent and cheat another – something said, done or omitted with the design of perpetrating what is known to be a cheat or deception." Merchants Nat'l Bank v. Moen (In re Moen), 238 B.R. 785, 790 (B.A.P. 8th Cir. 1999) (quoting RecoverEdge L.P. v. Pentecost, 44 F.3d 1284, 1293 (5th Cir. 1995)). "A 'false pretense' involves implied misrepresentation or conduct intended to create and foster a false impression." Moen at 791 (quoting In re Guy, 101 B.R. 961, 978 (Bankr. N.D. Ind. 1988)). "[W]hen the circumstances imply a particular set of facts, and one party knows the facts to be otherwise, that party may have a duty to correct what would otherwise be a false impression. This is the basis of the 'false pretenses' provision of Section 523(a)(2)(A)." Moen at 791 (quoting In re Malcolm, 145 B.R. 259, 263 (Bankr. N.D. Ill. 1992)). False representations may be by omission or commission. Caspers v. Van Horne (In re Van Horne), 823 F.2d 1285, 1288 (8th Cir. 1987), abrogated on other grounds, Grogan v. Garner, 498 U.S. 279 (1991). A "misrepresentation" is "not only words spoken or written but also any other conduct that amounts to an assertion not in accordance with the truth." Moen at 791 (quoting LA Capitol Fed. Credit Union v. Melancon (In re Melancon), 223 B.R. 300, 308-09 (Bankr. M.D. La. 1998)). A debtor's silence regarding a material fact may constitute a false representation actionable under § 523(a)(2)(A). Fee v. Eccles (In re Eccles), 407 B.R. 338, 342 (B.A.P. 8th Cir. 2009).

Meuret Grain alleges in its complaint that:

1. Mr. Hysell warranted that he owned the grain he was contracting to sell, when he in fact did not own any grain;

2. Mr. Hysell concealed or failed to disclose that he was not a farmer, did not raise corn, did not own corn, did not have the resources to purchase sufficient corn to fulfill the contracts, and was speculating on the direction of the corn market; and

3. Mr. Hysell violated or attempted to violate the Nebraska Grain Dealer's Act, by suggesting he planned to purchase corn in South Dakota and haul it to Nebraska to fulfill the contracts.

Viewing the evidence on these issues in Meuret Grain's favor, as required, leads to the conclusion that Meuret Grain is unable to establish the necessary elements of § 523(a)(2)(A) to except the debt from discharge. In particular, the evidence establishes neither a false representation by Mr. Hysell upon which Meuret Grain justifiably relied nor Mr. Hysell's intention to deceive Meuret Grain. Rather, Mr. Hysell engaged in what, in hindsight, was an ill-advised scheme to play the commodities market, gambling that by the delivery dates in his contracts, he would be able to purchase corn at a lower price than he had contracted to receive and would make a profit. Grain prices instead rose, causing difficulty for speculators like Mr. Hysell. He testified in depositions that, at least until the prices increased, he thought he could purchase corn, perhaps in South Dakota, with money borrowed against the grain contracts, in order to fulfill the contracts. From a legal perspective, at the time he entered into the contracts, he intended to perform. This does not give rise to an inference of an intent to deceive Meuret Grain.

As to Meuret Grain's assertion that Mr. Hysell made false representations, Meuret Grain alleges that Mr. Hysell's signature on the contracts, which contain the sentence "The seller certifies that he is the sole owner of said grain and that the same is free from all liens and encumbrances whatsoever," amounted to a "representation" that he knew to be false concerning his ability to perform the contracts because at the time he did not own any grain. While that contractual statement was not true at the time Mr. Hysell signed the contracts, it also was not true for a significant number of farmers who signed similar contracts. A Meuret Grain representative testified in September 2008 in a trial in Holt County Court on criminal charges against Mr. Hysell arising from the same underlying facts that he had already entered into similar contracts for delivery of grain in 2009, 2010, and 2011. When Mr. Hysell's attorney pointed out that the contracted grain had not yet been grown, so the grain company could not know whether the seller would have the ability to deliver the contracted amount of grain, the witness said he assumes people are honest and trustworthy and will abide by their agreements. Tr. for Case No. CR08-192 at 71:11-23 (Fil. No. 50). The Meuret Grain representative also testified that the company routinely accepts grain that it knows is subject to a security interest, but it tries to ensure the proper parties receive payment by examining state lien records before it writes the checks to pay for the delivered grain. Id. at 31:17-22.

Even if a debtor makes a false statement, no fraud exists unless the debtor knows that statement is false at the time it is made. Lindau v. Nelson (In re Nelson), 357 B.R. 508, 513 (B.A.P. 8th Cir. 2006). "A promise is a representation of intent to perform that which is promised. A breach of the promise, however, does not establish that the representation was false." Davis v. Rickabaugh (In re Rickabaugh), 355 B.R. 743, 757 (Bankr. N.D. Iowa 2006) (citing DCFS Trust v. Goldstein (In re Goldstein), 345 B.R. 412, 422 (Bankr. D. Mass. 2006)). To establish that Mr. Hysell's promise to perform under the contract constituted a false representation, Meuret Grain would have to prove that, at the time he made the promise, Mr. Hysell had no intention of honoring it. His lack of ownership of any corn when he entered into the contracts, which for legal purposes is no different than farmers who do not have corn in the bin or in the field when they contract to sell it, does not prove intent not to honor the agreement. While the farmer intends to perform the contract by growing the corn, Mr. Hysell intended to purchase the large amount he had contracted to sell. The reality of his inability to do so did not arise until later, after the contracts were made.

While Meuret Grain clearly has grounds for a breach of contract action, it does not have grounds to except this debt from discharge. Absent evidence of fraud, debts arising from contract breaches are not excepted from discharge in bankruptcy. Nelson, 357 B.R. at 514; Integrated Practice Mgmt., Inc. v. Olson (In re Olson), 325 B.R. 791, 801 (Bankr. N.D. Iowa 2005). Accordingly, the debtor's motion will be granted and judgment will be entered in his favor.

IT IS ORDERED: The debtor defendant's motion for summary judgment (Fil. No. 53) is granted. Separate judgment will be entered.

DATED:    February 3, 2011

BY THE COURT:

/s/ Timothy J. Mahoney
United States Bankruptcy Judge

Notice given by the Court to:
    *David Grant Hicks
    James P. Meuret
    U.S. Trustee

Movant (*) is responsible for giving notice to other parties if required by rule or statute.